**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Zounds Hearing Franchising LLC, et al., | No. CV-16-00619-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Tina Moser, et al., | |
| Defendants. | |

Plaintiffs Zounds Hearing Franchising, LLC ("Zounds Franchising"), Zounds Hearing, Inc. ("ZHI"), and third-party defendant Sam Thomasson (founder and CEO of ZHI) have filed a motion to dismiss the counterclaims and third-party complaint (collectively, "Counterclaims") filed by Defendants Coastal Hearing, Inc. ("Coastal") and Tina Moser.  Doc. 31.  The issues are fully briefed (Docs. 31, 32, 37) and no party requests oral argument.  For the reasons set forth below, the Court will grant the motion to dismiss Counts VI and X and deny the motion on all other counts.

**I.   Background.**

Because Defendants are the non-moving party, the allegations set forth in their Counterclaims are taken as true for purposes of this motion. Zounds Franchising is an Arizona limited liability company with its principal place of business in Tempe, Arizona. Doc. 1 at 3. It contracts with third parties to own and operate franchises that sell Zounds brand hearing aids and accessories. *Id.* ZHI is a Delaware corporation with its principal

place of business in Tempe, Arizona and is in the business of selling approved Zounds products to franchisees and third parties. *Id.*

On December 9, 2013, Zounds Franchising and Coastal entered into a Franchise Agreement granting Coastal the rights to operate three Zounds Hearing Centers in Florida. Doc. 31 at 4; Doc. 1-1 at 50. On February 26, 2014, Zounds Franchising and Coastal entered into another Franchise Agreement for a Zounds Hearing Center in Seminole, Florida. Doc. 10 at 11. Tina Moser, president and controlling interest holder of Coastal, personally guaranteed the obligations of Coastal. *Id.* On March 13, 2014, Coastal purchased an already-existing Zounds franchise in Clearwater, Florida through an asset purchase agreement with Zounds Pennsylvania LLC and Zounds Franchising. Doc. 10 at 12. Contemporaneously, Zounds Pennsylvania LLC and Zounds Franchising entered into an assignment and consent to transfer agreement with Coastal ("Assignment Agreement"). *Id.*; Doc. 1-1 at 89. The Assignment Agreement included a clause which released Zounds Franchising from all claims through the date of the agreement ("the Release"). Doc. 1-1 at 91. The Release states, in pertinent part:

> Upon execution of this Agreement, and except for Franchisor's obligations under this Agreement, Assignee and Guarantors, for themselves and all persons and entities claiming by, through or under any of them, hereby release, acquit, and forever discharge the Franchisor Releasees from all obligations, claims, debts, demands, covenants, contracts, promises, agreements, liabilities, costs, attorneys' fees, actions or causes of action whatsoever, whether known or unknown, which Assignee and/or Guarantors, by themselves or on behalf of, or in conjunction with any other person, persons, partnership or corporation, have, had, or might claim to have against the Franchisor Releasees through the date of this Agreement, including those arising out of or related to: the offer, sale, operation and transfer of the Existing Franchise Agreement (and Existing Franchised Business); the offer and sale of the Zounds Hearing franchises under the Prior Franchise Agreements; the parties' respective rights and obligations under the Prior Franchise Agreements; and any and all rights, obligations or claims under any state franchise regulations or franchise relationship laws.
> . . . Assignee and Guarantors covenant and warrant that neither of them will . . . sue, [or] assist or cooperate with any third party in any third-party action against, any Franchisor Releasee arising out of or related to the claims released under this Section.

*Id.* The Franchise Agreement also states: "Franchisee agrees that nothing that Franchisee believes Franchisee has been told by Franchisor or Franchisor's representatives shall be binding unless it is written in this Agreement. This is an important part of this Agreement." Doc. 1-1 at 49.

Defendants allege that Plaintiffs made six material misrepresentations relating to the sale and operation of the franchise – four prior to the Franchise Agreement and two within the franchise disclosure documents. Doc. 10 at 14-17. Counterclaims include ten causes of action: Counts I-IV (fraud in the inducement), Count V (violation of Wisconsin Franchise Investment Law), Count VI (violation of Florida Stat. § 817.416), Count VII (violation of Arizona Consumer Fraud Act), Counts VIII-IX (declaratory judgement), and Count X (piercing the corporate veil). *Id.* at 17-27. Plaintiffs argue that the Counterclaims should be dismissed in their entirety as barred by the Release. Doc. 31 at 10. In the alternative, Plaintiffs allege individual counts I-IV, VI, VII, and X should be dismissed.

**II.   Legal Standard.**

A successful Rule 12(b)(6) motion must show either that the complaint lacks a cognizable legal theory or fails to allege facts sufficient to support its theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**III.   Analysis.**

   **A.   Dismissal in the Entirety.**

Plaintiffs move to dismiss all Counterclaims on the ground that the Release bars all causes of actions occurring before and through the date of signing, including the fraud claims. Doc. 31 at 9-10. With the exception of the piercing the corporate veil argument, Plaintiffs do not allege that Defendants failed to provide sufficient factual allegations, failed to plead with requisite particularity, or made only conclusory statements.

### 1. Timing.

Defendants assert that all of the claims in their Counterclaim "sound in and are based on fraud." Doc. 32 at 5. Defendants argue that these claims are not within the scope of the Release because they did not accrue until Defendants discovered Plaintiffs' misrepresentations – after the Release date. Defendants rely on *Transamerica Ins. Co. v. Trout*, 701 P.2d 851 (Ct. App. Ariz. 1958), which in turn cites A.R.S. § 12-543, the Arizona three-year statute of limitations for fraud. *Id.* at 854. Section 12-543 provides that fraud claims "shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake." A.R.S. § 12-543(3).

This case, however, does not concern the statute of limitations. The issue to be decided is whether the Release applies to fraud that occurred before the release date. The parties have not cited any Arizona case that addresses this issue, and the Court has found none, but other cases have recognized that, for fraud claims, "the injury and accrual of the cause of action may occur at a time distinct and separate from the commencement of the statute of limitations period." *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1412 (9th Cir. 1987). The Ninth Circuit also noted that a fraud cause of action "is generally said to accrue when a defendant commits the last overt injurious act." *Id.* (citing *Campbell v. Upjohn Co.*, 676 F.2d 1122, 1126 (6th Cir. 1982)). This suggests that Defendants' fraud claims arose – for purposes of the Release – when the fraud was committed. If so, the claims are barred by the Release.

Defendants' timing argument is also unpersuasive because the Release applies to claims both "known and *unknown.*" Doc. 1-1 at 91 (emphasis added). "Generally, and in Arizona, a court will attempt to enforce a contract according to the parties' intent. 'The primary and ultimate purpose of interpretation' is to discover that intent and to make it effective." *Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1138 (Ariz. 1993) (citations omitted). The very broad language of the Release makes clear that the parties intended to release all claims that arose before the date of signing, even unknown claims. Doc. 1-1 at 91 (Defendants release all "claims . . . or causes of action whatsoever,

- 4 -

whether known or unknown," that they "have, had, or might claim to have against the Franchisor Releasees through the date of this Agreement"). As one court has observed, "if the Court were to entertain argument that a release of unknown claims was not intended to include unknown claims, a release could never effectively encompass unknown claims." *United States v. Sardie*, 191 F. Supp. 2d 1128, 1135 (C.D. Cal. 2000) (citation omitted). For these reasons, Defendants' timing argument is unpersuasive.

### 2.  **Fraudulent Inducement.**

Defendants alternatively contend that the Release and the Assignment Agreement are void because they were the product of fraudulent inducement by Plaintiffs. Doc. 32 at 8. When a contract is the product of fraudulent inducement, the party that "justifiably relie[d] on the misrepresentations" may void the contract. *John Munic Enters., Inc. v. Laos*, 326 P.3d 279, 283 (Ariz. Ct. App. 2014). "The principle expressed in the rule is that when fraud enters into a transaction to the extent of inducing execution of a written document, the instrument never becomes a valid contract, and the party seeking to rescind the contract is not bound by its terms." *Wagner v. Rao*, 885 P.2d 174, 176 (Ariz. Ct. App. 1994) (citations omitted).

Arizona courts have not directly addressed whether a general release encompasses fraudulent inducement in the context of business agreements, but they have discussed related issues. In *Meritage Homes Corp. v. Hancock*, 522 F. Supp. 2d 1203 (D. Ariz. 2007), a judge on this Court held that an allegation of fraudulent inducement did not invalidate a release agreement because the counterclaimant did not show reliance on the first misrepresentation, and the second alleged misrepresentation was a true statement. Notably, the judge considered the merits of the fraudulent inducement claim rather than simply dismissing the claim as barred by the release.

In the analogous context of releases obtained by insurers, Arizona courts have held that releases do not bar claims for fraudulent inducement. *See e.g.*, *Love v. Home Transp. Co.*, 641 P.2d 854 (Ariz. 1982) (permitting fraudulent inducement claim to be decided on the merits when a release was obtained by an insurance adjustor shortly after plaintiff was

- 5 -

hospitalized); *Lubin v. Johnson*, 820 P.2d 328, 328-329 (Ariz. Ct. App. 1991) ("There is nothing particularly attractive in the proposition that an insurer, or anyone else, may by misrepresentation induce a person to forego rights and then defend on the ground that the fraud is excused because the person defrauded should have known better.").

Other jurisdictions are divided on whether to bar fraud in the inducement when there is a general release of claims. The Supreme Court of Arkansas has stated that "misrepresentation of facts amounting to fraud can render a release of claims ineffective and . . . present a question of fact for the jury. Furthermore, we have said that releases contained in contracts do not relieve a party of liability for fraud if that party obtained the contract by fraud." *Wal-Mart Stores, Inc. v. Coughlin*, 255 S.W.3d 424, 431-32 (Ark. 2007) (internal citations omitted). In *E.I. DuPont de Nemours and Co. v. Florida Evergreen Foliage*, 744 A.2d 457 (Del. 1999), the Supreme Court of Delaware held that while expansive, a release of "claims known and unknown" without direct reference to fraudulently induced claims did not reach claims unknown to the releasing party "when the ignorance of such a claim is attributable to fraudulent conduct by the released party." *Id.* at 460-61. Washington and Texas take similar approaches. *See Hawkins v. Empres Healthcare Management, LLC*, 371 P.3d 84, 89-92 (Wash. Ct. App. 2016) (explicit intent to release fraudulent inducement claims required); *Shannon v. Mem'l Drive Presbyterian Church U.S.*, 476 S.W.3d 612 (Tex. App. 2015) (same).

New York bars fraudulent inducement claims released by agreement unless those claims allege particular facts indicating "separate and distinct fraud from that contemplated by the agreement." *Consorcio Prodipe, S.A. de C.V. v. Vinci, S.A.*, 544 F. Supp. 2d 178, 189-93 (S.D.N.Y. 2008) (citations omitted); *see also Devon IT, Inc. v. IBM Corp.*, 805 F. Supp. 2d 110, 120 -22 (E.D. Pa. 2011) (using New York law to find that misrepresentations that allegedly induced Plaintiffs to sign the agreements "provide[d] grounds with which to challenge the releases contained in the agreements"). Florida courts look to the breadth of the release language. *See Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.*, 761 So. 2d 306 (Fla. 2000) (a release within a settlement

agreement narrowly construed did not bar fraudulent inducement claims); *but see Solidda Group v. Sharp Elec. Corp.*, Case No. 12-21411, 2014 WL 12513585 (S.D. Fla. 2014) (release agreement which covered "known or unknown" claims was broad enough to include unknown fraudulent inducement claims). Oregon generally holds that fraudulent inducement claims are barred by a broad release. *Ristau v. Wescold Inc.*, 868 P.2d 1331 (Or. 1994) (release agreement barred fraudulent inducement claim where the release broadly encompassed all claims "whether known or unknown, now existing," and the fraudulent inducement claim was existing at the time of the contract's execution); *Lindgren v. Berg*, 772 P.2d 1336, 1338 (Or. 1989) ("We allowed review to consider whether the release plaintiffs signed bars them from litigating whether the release itself was induced by . . . fraud. We hold that it does.").

Arizona's insurance-release case law most closely resembles the approach of Delaware, Washington, and Texas – supporting the parties' freedom to contract, but not finding waiver of fraudulent inducement without an express manifestation of such intent. Given this approach, which the Court adopts for this case, the Court cannot conclude on a motion to dismiss that the Release bars the Counterclaims. The parties' intent in entering into the Release must be addressed at summary judgment and, perhaps, at trial.

Plaintiffs argue in their reply that the economic loss doctrine prevents Defendants from prevailing on their fraudulent inducement claims. Doc. 37 at 6-7. The Court will not consider an argument raised for the first time in a reply brief. *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1002 (D. Ariz. 2011).

### B. Individual Claims.

In the alternative, Plaintiffs seek dismissal of Counts I-IV, VI, VII, and X.

#### 1. Counts I-IV: Fraudulent Inducement.

Plaintiffs argue that if the entire claim is not dismissed as barred by the Release, Counts I-IV pertaining to Fraud in the Inducement should be dismissed because the Franchise Agreement was a fully integrated contract and no outside misrepresentations were considered. Doc. 31 at 11. Even if true, Defendants allege at least two

misrepresentations *within* the franchise disclosure documents which they contend induced them to sign the Franchise Agreement. Doc. 10 at 15-16 (referring to paragraphs 44 and 45 of the counterclaim). Taken as true, these alleged misrepresentations support the fraudulent inducement claims that must be adjudicated on the merits.

### 2. Count VI: Florida Franchise Misrepresentation Act.

Plaintiffs argue that Count VI should be dismissed because the Florida Franchise Misrepresentation Act ("FFMA") does not apply to this case. Doc. 31 at 13. The Franchise Agreement states that it "shall be governed by and construed in accordance with the laws of the State of Arizona, without reference to Arizona's conflict of laws principles." Doc. 1-1 at 46.

"When parties include an express choice-of-law provision, Arizona courts apply the analysis set forth in the Restatement (Second) of Conflict of Laws § 187 to determine whether that choice is 'valid and effective' and to determine the appropriate balance between the parties' circumstances and states' interests." *Sherman v. PremierGarage Systems, LLC*, No. CV-10-0269-PHX-MHM, 2010 WL 3023320, at *5 (D. Ariz. July 30, 2010) (citing *Swanson v. The Image Bank, Inc.*, 77 P.3d 439, 441-42 (Ariz. 2003)). The last phrase of the parties' choice-of-law provision in this case suggests that Arizona law should be applied without regard to conflict of law principles like those in § 187, but Arizona courts do not honor such provisions. Parties cannot contractually bypass the § 187 analysis. *Swanson*, 77 P.3d at 441.

Section 187 provides, in relevant part, that "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Restatement § 187(1). The Court has previously described the analysis under § 187(1) in these terms: "the choice of law provision is valid if the parties could have agreed in their contract to the same provisions that the chosen law would impose, and could have done so under the law of the state with the most significant contacts with the transaction under Restatement § 188." *Pathway Med. Techs., Inc. v.*

*Nelson*, No. CV-11-0857-PHX-DGC, 2011 WL 4543928, at *2 (D. Ariz. Sept. 30, 2011).

The Court concludes that Arizona has the most significant contacts on this issue. In performing a § 188 analysis, the Court is to consider the factors most important to the particular issue to be decided – in this instance, whether the parties could have agreed in their contract to waive the provisions of the FFMA. Restatement § 188(2). The Court concludes that the factors most important to that decision are the domiciles or places of business of the contracting parties, and the location of their relationship as the franchise agreements were being put in place. Plaintiff Zounds Franchising is an Arizona limited liability company with a principal place of business in Arizona. Plaintiff ZHI is a Delaware corporation with a principle place of business in Arizona. Additionally, in the franchise acquisition process, Tina Moser traveled to Zounds Franchising's facility in Arizona for training. Doc. 1 at 5. Defendant Coastal Hearing is a Wisconsin corporation, and Tina Moser is a Wisconsin resident. As between Arizona and Wisconsin, the Court concludes that Arizona has the most significant relationship. It is the location of two of the four parties and the location where Plaintiff received relevant training. Thus, the Court will look to Arizona law for purposes of answering the § 187(1) question: could the parties have achieved by contract what they seek to achieve by choosing Arizona law? *Pathway*, 2011 WL 4543928, at *2 ("section 187(1) is satisfied only if the parties could have agreed by contract to the terms that will be imported into their relationship through their choice of law").

The Supreme Court of Arizona has held that statutory rights may be waived by an express contract between experienced and sophisticated business parties of relatively equal bargaining power, both represented by attorneys. *Swanson*, 77 P.3d at 439; *see also Verma v. Stuhr*, 221 P.3d 23, 36-37 (Ariz. Ct. App. 2009) ("'It is well settled that most rights may be waived.' We have permitted the waiver of statutory rights by their intended beneficiaries in many circumstances.") (citations omitted). This case has such parties, and the Court therefore concludes that their choice of Arizona law, which precludes a claim under the FFMA, is valid and enforceable under § 187(1). The Court

notes that *Sherman* reached the same conclusion.[1]

Defendants contend that Restatement § 187 comment g indicates Florida law should guide the dispute resolution because Florida has an interest in protecting against fraud within the State and the franchises were operated in Florida. Doc. 32 at 11. But Defendants cite only the first portion of the comment. *Id.* It also provides that the agreed State's law will only be refused in two circumstances: (1) when it is required to protect a "fundamental policy" of the alternative State, or (2) when the alternative State has a "materially greater interest than the state of the chosen law in the determination of the particular issue." Restatement § 187 cmt. g. Here, Defendants have shown neither that Arizona law would contravene fundamental policies of Florida law, nor that Florida has a materially greater interest in this dispute that should overcome the traditional § 187(1) analysis. This is particularly true given that Florida did not include an anti-waiver provision in the FFMA. Fla. Sta. Ann. § 817.416.

Because Arizona law permits the waiver of the FFMA, this Court finds the disputed issue to be one which the parties could have resolved by an explicit provision in their agreement, thereby satisfying the requirement of § 187(1). The Arizona choice-of-law provision is therefore valid, and Defendants have waived their right to bring a claim under Florida law. Count VI will be dismissed.

### 3. Count VII: Violation of Arizona Consumer Fraud Act.

The Arizona Consumer Fraud Act (CFA) provides, in relevant part:

> The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise

---

[1] Defendants' fraudulent inducement claim does not alter this conclusion. Defendants do not specifically allege that the choice-of-law provision was procured by fraud. *See* Restatement § 201, cmt. c ("The fact that a contract was entered into by reason of misrepresentation, undue influence or mistake does not necessarily mean that a choice-of-law provision contained therein will be denied effect. This will only be done if the misrepresentation, undue influence or mistake was responsible for the complainant's adherence to the provision.").

- 10 -

> whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

A.R.S. § 44-1521 (A). The Act defines "merchandise" as "any objects, wares, goods, commodities, intangibles, real estate, or services." A.R.S. § 44-1521.

The issue is whether a franchise constitutes "merchandise" for the purposes of the Act. Defendants argue that *Flower World of Am., Inc. v. Wenzel*, 594 P.2d 1015 (Ariz. Ct. App. 1978), controls. Doc. 32 at 11-12. *Flower World* held that the CFA's definitions of "consumer" and "merchandise" provided a "virtually unrestricted statutory scheme" which permitted the act to apply to the sale of a franchise. *Id.* at 1017-18. In 2016, Arizona courts noted that *Flower World* remains good law. *Murray v. Farmers Ins. Co. of Ariz.*, 366 P.3d 117 (Ariz. Ct. App. 2016) (citing *Flower World*'s interpretation of the CFA before holding that the "broad language and remedial purpose of the CFA" permitted a third-party beneficiary to a transaction to bring a claim under the CFA); *Larona v. Ariz. Summit Law School, LLC*, No. CV-15-00972-PHX-NVW, 2016 WL 2893429, at *4 (D. Ariz. May 18, 2016) (citing *Flower World* to state that Arizona has accepted a wide definition of "merchandise" for purposes of the CFA).

On the narrow issue of whether franchises constitute "merchandise" under the CFA, *Flower World* is directly on point and controlling. The franchise in the present case is subject to CFA. The motion to dismiss Count VII of the Counterclaims is denied.[2]

### 4. Count X: Piercing the Corporate Veil Against Sam Thomasson.

Plaintiffs state that this Court should dismiss Count X of the counterclaim because piercing the corporate veil is only a means of imposing liability for an underlying cause of action and not an independent cause of action. Doc. 31 at 17. The Court agrees.

"Arizona law does not recognize a claim for piercing the corporate veil . . . as an independent cause of action." *Piaquadio v. Am. Legal Funding LLC*, No. CV-15-00579-

---

[2] Plaintiffs argue that *Waste Mfg. & Leasing Corp. v. Hambicki*, 900 P.2d 1220 (Ariz. Ct. App. 1995), controls because it pertains to the sale of businesses, but *Waste Mfg.* distinguished *Flower World* and did not overrule it. Because *Flower World* is directly on point and continues to be good law, the Court must follow it.

- 11 -

PHX-GMS, 2016 WL 393638 at *2-3 (D. Ariz. Feb. 2, 2016) (citing *Five Points Hotel P'ship v. Pinsonneault*, 2014 WL 1713623, at *3-4 (D. Ariz. May 1, 2014); *In re Elegant Custom Homes, Inc.*, 2007 WL 1412456, at *6 (D. Ariz. May 14, 2007); *Dusharm v. Elegant Custom Homes, Inc.*, 302 F.App'x 571 (9th Cir. 2008); *Lindquist v. Farmers Ins. Co. of Ariz.*, 2008 WL 343299, at *10 (D. Ariz. Feb. 6, 2008)). Instead, piercing the corporate veil is a component of the substantive claims alleged. *Local 159, 342, 343, & 444 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 985 (9th Cir. 1999) ("[a] request to pierce the corporate veil is only a means of imposing liability for an underlying cause of action and is not a cause of action in and of itself.").

Count X will be dismissed as an independent cause of action. Defendants are not precluded from attempting to pierce the corporate veil in pursuing relief for their remaining claims.

**IT IS ORDERED** that Plaintiff's motion (Doc. 31) is **granted** with respect to **Counts VI and X** and **denied** with respect to all other Counts.

Dated this 2nd day of November, 2016.

_____
David G. Campbell
United States District Judge

- 12 -